**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOANNA CHAITRAM,<br><br>     Plaintiff,<br><br>  v.<br><br>PENN MEDICINE-PRINCETON MEDICAL CENTER,<br><br>     Defendant. | Civil Action No. 21-17583 (MAS) (TJB)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

  This matter comes before the Court on Defendant Penn Medicine-Princeton Medical Center's (the "Hospital") Motion to Dismiss Plaintiff Joanna Chaitram's ("Chaitram") Complaint. (ECF No. 10.) Chaitram opposed (ECF No. 11), and the Hospital replied (ECF No. 14). The Court has carefully considered the parties' submissions and decides the matter without oral argument under Local Civil Rule 78.1. For the reasons below, the Court denies the Hospital's Motion.

**I. BACKGROUND**

  Chaitram is profoundly deaf and communicates through American Sign Language ("ASL"). (Compl. ¶ 4, ECF No. 1.) Chaitram requires accommodations to effectively communicate in public accommodations, including auxiliary aids such as ASL interpreters. (*Id.*) Relevant here, Chaitram alleges that the Hospital is the closest medical facility to her home. (*Id.* ¶ 20.) Chaitram claims that on six separate occasions, she visited the Hospital to receive medical treatment, but the Hospital failed to provide proper accommodations in the form of an ASL interpreter. (*Id.*) During each of these visits, Chaitram claims that she was unable to effectively participate in or understand

her medical care because the Hospital failed to provide an ASL interpreter despite her numerous requests. (*Id.* ¶¶ 12-21.)

The first of the six visits occurred in September 2018. Chaitram went to the Hospital's emergency room because she had a severe migraine headache. (*Id.* ¶ 13). According to Chaitram, she requested an ASL interpreter to communicate but the Hospital did not provide one. (*Id.*) Instead, the Hospital's staff utilized Chaitram's minor children to translate. (*Id.*)

Similarly, in March 2019, Chaitram went to the emergency room at the Hospital because she had a migraine headache and an allergic reaction. (*Id.* ¶ 14). Chaitram once again requested an ASL interpreter, but the Hospital did not comply with her request. (*Id.*) As a substitute, the Hospital's staff communicated with Chaitram through one of Chaitram's friends and her minor daughter. (*Id.*). Less than two weeks later, Chaitram returned to the Hospital with a migraine headache, but this time, her symptoms also included eye pain and vomiting. (*Id.* ¶ 15.) Chaitram requested an ASL interpreter, but the Hospital did not accommodate this request. (*Id.*)

Almost a year later, in February 2020, Chaitram visited the Hospital with conjunctivitis of the eyes. (*Id.* ¶ 16.) Chaitram requested an ASL interpreter to translate, but instead, the Hospital's staff used written notes and Chaitram's family to communicate with her. (*Id.*) Later that same month, Chaitram returned to the Hospital with a migraine headache. (*Id.* ¶ 17.) Chaitram again requested an ASL interpreter while in triage, but instead, she had to communicate with the Hospital's staff through written notes. (*Id.*)

In April 2021, Chaitram arrived at the Hospital's emergency room with another migraine headache. (*Id.* ¶ 18.) On this final visit, Chaitram requested that the Hospital provide an ASL interpreter; however, all communication between Chaitram and the Hospital's staff occurred through written notes once more. (*Id.*)

In September 2021, Chaitram filed her Complaint, alleging causes of action for violations of Title III of the Americans with Disabilities Act ("ADA"), Section 504 of the Rehabilitation Act of 1973 ("RA"), the New Jersey Law Against Discrimination ("NJLAD"), and the Affordable Care Act ("ACA") seeking declaratory and injunctive relief as well as money damages. (*See generally* Compl., ECF No. 1.) On December 3, 2021, the Hospital filed its Motion under Federal Rules of Civil Procedure 12(b)(1) and (b)(6).[1] (ECF No. 10.) Chaitram opposed (ECF No. 11), and the Hospital replied (ECF No. 14).

## II.   LEGAL STANDARD

### A.   Federal Rule of Civil Procedure 12(b)(1)

Under Rule 12(b)(1), a court must grant a motion to dismiss if it lacks subject matter jurisdiction to hear a claim. *See* Fed. R. Civ. P. 12(b)(1). A motion to dismiss for want of standing is properly brought under Rule 12(b)(1), because "standing is a jurisdictional matter." *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007). On a motion to dismiss for lack of standing, plaintiff "bears the burden of establishing the elements of standing, and each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Ballentine*, 486 F.3d at 810 (citations and internal quotation marks omitted).

In evaluating a Rule 12(b)(1) motion to dismiss, courts must first determine whether the motion "presents a 'facial' attack or a 'factual' attack on the claim at issue, because that distinction determines how the pleading must be reviewed." *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 357 (3d Cir. 2014) (quoting *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012)). "A facial 12(b)(1) challenge, which attacks the

---

[1] Unless otherwise noted, all references to a "Rule" or "Rules" hereinafter refer to the Federal Rules of Civil Procedure.

3

complaint on its face without contesting its alleged facts, is like a 12(b)(6) motion in requiring the court to 'consider the allegations of the complaint as true.'" *Hartig Drug Co. Inc. v. Senju Pharm. Co.*, 836 F.3d 261, 268 (3d Cir. 2016) (citation omitted). A factual challenge, on the other hand, "attacks allegations underlying the assertion of jurisdiction in the complaint, and it allows the defendant to present competing facts." *Id.* The party invoking the federal court's jurisdiction has "the burden of proof that jurisdiction does in fact exist." *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 n.3 (3d Cir. 2006) (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). A Rule 12(b)(1) motion, accordingly, "strips the plaintiff of the protections and factual deference provided under 12(b)(6) review." *Hartig Drug Co.*, 836 F.3d at 268.

**B.     Federal Rule of Civil Procedure 12(b)(6).**

Rule 8(a)(2) requires only "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). On a motion to dismiss for failure to state a claim, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

A district court conducts a three-part analysis when considering a motion to dismiss pursuant to Rule 12(b)(6). *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must "review[] the complaint to strike conclusory allegations." *Id.* The court must accept as true all of the plaintiff's well-pleaded factual allegations and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). In doing so, however, the

4

court is free to ignore legal conclusions or factually unsupported accusations that merely state "the-defendant-unlawfully-harmed-me." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678).

### III.   DISCUSSION

The Court begins by addressing the Hospital's motion to dismiss Chaitram's Complaint for lack of standing as to her request for injunctive relief. Next, the Court will address the Hospital's motion to dismiss Chaitram's Complaint for failure to state a claim under the ADA, RA, NJLAD, and the ACA.

#### A.   Standing for Injunctive Relief

The Hospital argues that Chaitram is not entitled to injunctive relief because she does not allege that she faces a real and immediate threat of future injury, and therefore, does not have standing. (Def.'s Moving Br. 5, ECF No. 10-1.) For her part, Chaitram claims that she has standing because (1) the Hospital is the closest to her home, (2) she has a chronic migraine condition that resulted in visits to the Hospital five times in the last three years, and (3) the Hospital will continue to deny her reasonable accommodations as demonstrated by its prior conduct. (Pl.'s Opp'n Br. 8, ECF No. 11.)

For a plaintiff to have Article III standing, she must adequately allege three things: (1) that she has an injury in fact; (2) that there is a causal connection between her injury and the conduct complained of; and (3) that her injury will be redressed by a favorable judicial decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). To demonstrate injury-in-fact, Chaitram must show that she has "suffered 'an invasion of a legally protected interest' that is 'concrete and

5

particularized' and 'actual or imminent, not just conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (citations omitted). The particularity element of injury-in-fact requires Chaitram to demonstrate that she is "affect[ed] . . . in a personal and individual way." *Id.* The concrete element requires that the injury be "'real,' and not 'abstract.'" *Id.* at 340. However, "[c]oncrete" is not the same as "tangible." *Id.* at 341. Concrete injuries are "physical, monetary, or cognizable intangible harm[s] traditionally recognized as providing a basis for a lawsuit in American courts." *TransUnion LLC v. Ramirez*, 141 S.Ct. 2190, 2206 (2021) (citations omitted).

"Because the remedy for a private ADA Title III violation is injunctive relief, courts look beyond the alleged past violation and consider the possibility of future violations." *Heinzl v. Starbucks Corp.*, 2015 WL 1021125, at *5 (W.D. Pa. Mar. 09, 2015). In the context of injunctive relief, the "material risk of future harm can satisfy the concrete-harm requirement . . . so long as the risk of harm is sufficiently imminent and substantial." *TransUnion LLC*, 141 S. Ct. at 2197; *Hollinger v. Reading Health Sys.*, 2016 WL 3762987, at *10 (E.D. Pa. July 14, 2016) (citation omitted). Courts in this District routinely consider the following four factors to determine whether a plaintiff has alleged a threat of future injury that is sufficiently concrete and particularized: (1) the plaintiff's proximity to the defendant's place of public accommodation; (2) the plaintiff's past patronage; (3) the plaintiff's frequency of nearby travel; and (4) the definiteness of the plaintiff's plan to return. *La. Counseling & Fam. Servs. Inc. v. Mt. Fuji Japanese Rest.*, No. 08-6143, 2011 WL 3273548, at *4 (D.N.J. July 27, 2011) (citations omitted).

Turning to the matter at-hand, the Court begins by applying the first factor. Chaitram plainly alleges that the Hospital is the closest medical center to her home. (Compl. ¶ 20.) As to the second factor, as illustrated by the Complaint, Chaitram visited the Hospital six times in the last three years. (*Id.* ¶¶ 13-18.) Next, the third factor weighs heavily in favor of Chaitram because she sufficiently alleged that her residence is within the area of the Hospital's place of accommodation.

6

*Disabled Patriots of Am., Inc. v. City of Trenton*, No. 07-3165, 2008 WL 4416459, at *6 (D.N.J. Sept. 24, 2008); *Access 4 All, Inc. v. 539 Absecon Blvd., L.L.C.*, No. 05-5624, 2006 WL 1804578, at *4 (D.N.J. June 26, 2006).

Finally, addressing Chaitram's intent to return to the Hospital, this is a closer call but the Court ultimately finds that this factor weighs in favor of finding standing. To adequately allege this factor, a plaintiff must demonstrate a "definitive, uncontested intent to return." *Brown v. Showboat Atl. City Propco, LLC*, No. 08-5145, 2010 WL 5237855, at *11 (D.N.J. Dec. 16, 2010) (citing *Absecon Blvd.*, 2006 WL 1804578 at *4). The Court concludes that Chaitram sufficiently alleged facts underlying this factor. Other courts have determined a plaintiff's likelihood to return based on an "established pattern." *Juech v. Children's Hosp. & Health Sys., Inc.*, 353 F. Supp. 3d 772, 785 (E.D. Wis. 2018). To start, by the very nature of a hospital, no one arguably hopes to require emergency medical care in the future. But as explored above, in the past, Chaitram has repeatedly visited the Hospital due to reoccurring migraines. Indeed, within the past three years, migraines have forced Chaitram to visit the Hospital five times. *Camarillo v. Carrols Corp.*, 518 F.3d 153, 158 (2d Cir. 2008) ("[I]t is . . . reasonable to infer, based on the past frequency of her visits and the proximity of defendants' restaurants to her home, that [plaintiff] intends to return to these restaurants in the future"). Chaitram also alleges that the Hospital is closest to her home.[2] With these facts in mind, the Court determines it reasonable to infer that Chaitram will visit the Hospital again due to persistent migraines. *Benavides v. Laredo Med. Ctr.*, No. 08-105, 2009 WL 1755004, at *4 (S.D. Tex. Jun. 18, 2009) (concluding that plaintiff had standing where plaintiff likely would need defendant's services again due to history of using provider and ongoing chronic

---

[2] The Hospital alleges that there is one hospital closer to Chaitram's city of residence. (Def.'s Reply Br. 5.) The Hospital, however, fails to definitively establish that the alternative hospital is indeed closer to Chaitram's actual home.

health conditions); *Majocha v. Turner*, 166 F. Supp. 2d 316, 325 (W.D. Pa. 2001) (denying motion to dismiss on standing grounds because plaintiffs "chronic ear infections . . . are likely to recur and may require additional surgical procedures").

Based on the Complaint's allegations, the Court finds it reasonable to infer that it is likely that Chaitram will be refused an ASL interpreter during her future visit to the Hospital because the Hospital is zero for six on providing her an interpreter in the past. *Sunderland v. Bethesda Hosp., Inc.*, 686 F. App'x 807, 819 (11th Cir. 2017) (finding plaintiff likely would experience discrimination in the future because the defendant hospital "failed to accommodate [plaintiff], and no evidence suggests that [the hospital] has taken steps to prevent such a failure in the future."). Accordingly, the Court concludes that Chaitram has standing to request injunctive relief.

### B. Plaintiff's ADA, RA, NJLAD, and ACA Claims

The Court moves to whether Chaitram has alleged past violations of the ADA, RA, NJLAD and ACA. The Hospital contends that Chaitram cannot show that the Hospital discriminated against her on the basis of her disability. (Def.'s Moving Br. 7-10.) This is because, the Hospital argues, she fails to state a claim that the accommodations the Hospital provided were not reasonable or that she was not able to understand her care due to the lack of an interpreter. (*Id.*) Chaitram contends that she required an interpreter to effectively communicate and the Hospital failed to provide one, as pled in her Complaint. (Pl.'s Opp'n Br. 15.)

To preface the Court's analysis, Chaitram's claims under the statutes are governed by the same legal standard.[3] To establish a claim for relief, Chaitram must adequately allege that (1) she was disabled, (2) the Hospital is a "place of public accommodation under" Title III of the ADA and (3) the Hospital unlawfully discriminated against Chaitram on the basis of her disability by (a) failing to make a reasonable modification that was (b) necessary to accommodate her disability. *Matheis v. CSL Plasma, Inc.*, 936 F.3d 171, 175 (3d Cir. 2019) (citation omitted). To be sure, the Hospital does not contest that Chaitram adequately alleges the first two prongs—that is, it concedes that Chaitram is disabled and that the Hospital is a place of public accommodation. *Matheis*, 936 F.3d at 175.

As to the third prong of the analysis, whether a medical facility provided appropriate auxiliary aids to a deaf patient is usually a fact-intensive inquiry. *Liese v. Indian River Cty. Hosp. Dist.*, 701 F.3d 334, 342-43 (11th Cir. 2012) (citing *Chisolm v. McManimon*, 275 F.3d 315, 327 (3d Cir. 2001) ("[g]enerally, the effectiveness of auxiliary aids and/or services is a question of fact precluding summary judgment."); *Randolph v. Rodgers*, 170 F.3d 850, 859 (8th Cir. 1999) (finding that whether a sign language interpreter was required under the RA is a question of fact inappropriate for summary judgment); *Duffy v. Riveland*, 98 F.3d 447, 454-56 (9th Cir. 1996)

---

[3] In the Third Circuit, when a plaintiff sues under the RA, ADA, and NJLAD, courts often address the claims under the same legal standard. *Berardelli v. Allied Servs. Inst. of Rehab. Med.*, 900 F.3d 104, 117 (3d Cir. 2018) (quoting *Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ.*, 587 F.3d 176, 189 (3d Cir. 2009)); *Lee v. Univ. Med. Ctr. of Princeton*, No. 18-9257, 2022 WL 206083, at *4 (D.N.J. Jan. 24, 2022) ("NJLAD claims are interpreted consistently with both the ADA and RA."). Although the Third Circuit has yet to address section 1557 of the ACA, other courts have interpreted the statute consistently with the RA. *See Francois v. Our Lady of the Lake Hosp., Inc.*, 8 F.4th 370, 378 (5th Cir. 2021) ("the case law construing the [RA] generally applies to claims under section 1557 for disability discrimination by a health care insurer."); *Schmitt v. Kaiser Found. Health Plan of Washington*, 965 F.3d 945, 954 (9th Cir. 2020); *Doe v. BlueCross BlueShield of Tennessee, Inc.*, 926 F.3d 235, 239 (6th Cir. 2019) (the Affordable Care Act picks up the standard of care for showing a violation of § 504 [of the RA]"). Because the ACA is applied consistently with the RA, and the RA is applied consistently with the ADA and NJLAD, the Court will analyze the four statutes together.

(concluding that whether qualified sign language interpreter was required is a question of fact inappropriate for summary judgment). Indeed, the Hospital has the burden of persuasion to demonstrate that Chaitram's reasonable accommodation claims are deficient.

Here, the Hospital does not fulfill that burden. The Court concludes that Chaitram has plausibly alleged the Hospital failed to provide reasonable accommodations at this stage of the litigation. The Hospital argues that failure to provide an interpreter is not a *per se* requirement. (Def.'s Moving Br. 8.) That is true. When measuring the accommodation required, courts must consider "the nature, length and complexity of the communication" involved. 28 C.F.R. § 36.303(c)(1). But as the Hospital also states, "context is key," and the Hospital fails to consider that the Court does not yet have before it any relevant context to determine whether the use of written notes or Chaitram's family and friends to translate was reasonable during Chaitram's visits to the Hospital. For example, the Court does not have the actual written communications used on certain of Chaitram's visits nor can the Court evaluate the testimony of Chaitram or the Hospital staff because no deposition has been taken. This is because the Hospital moves for dismissal now when these matters are more appropriately handled at the summary judgment stage *at the earliest*. Even the cases the Hospital cites convey that determining whether an accommodation is reasonable is appropriately determined with more facts. *Silva v. Baptist Health S. Fla., Inc.*, 856 F.3d 824, 836 (11th Cir. 2017) (reversing lower court's grant of summary judgment and finding genuine dispute of material fact existed as to whether hospital provided reasonable accommodations to deaf patient); *Feldman v. Pro Football, Inc.*, 419 F. App'x 381, 387 (4th Cir. 2011) (affirmance at the summary judgment stage); *Martin v. Halifax Healthcare Sys., Inc.*, 621 F. App'x 594, 598 (11th Cir. 2015) (same); *Borngesser v. Jersey Shore Med. Ctr.*, 774 A.2d 615, 628 (N.J. Super. Ct. App. Div. 2001) (appeal after a jury trial). The Hospital's motion is premature, to say the least.

Finally, the Hospital contends that Chaitram failed to allege that her medical issues were complex enough that she needed more than the written communications provided. (Def.'s Moving Br. 9.) Once again, the Hospital is off base. First, the Hospital ignores that Chaitram alleges that on several of her visits to the Hospital, the Hospital staff did not use written notes to communicate with her, but instead, used friends and minor children as ASL interpreters. (Compl. ¶¶ 13-14.) Accepting Chaitram's allegations as true (as the Court must), Chaitram alleges that on several occasions, even when the Hospital used written notes, she was unable to participate in her own care because of the lack of an ASL interpreter. (*Id.* ¶¶ 13-18.) For example, Chaitram alleges that when she visited the hospital in April 2021, the Hospital used written notes to communicate with Chaitram but she was unable to fully convey the symptoms of her migraine nor understand her prognosis or treatment. (*Id.* ¶ 18.) The Court finds that at this stage of the litigation, Chaitram plausibly alleges claims for relief.

## IV.   CONCLUSION

For the foregoing reasons, the Court denies the Hospital's motion to dismiss. An appropriate order will follow.

/s/ Michael A. Shipp
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE